# Wheeling.

## JAMES JARRETT, JUN., vs. JAMES M. NICKELL.

### January Term, 1870.

1. Two counts in a declaration of debt describe two bonds; a plea is entered purporting to make defense to the whole action, but the matter of defense goes only to the consideration of one of the bonds. In this the plea is bad, but judgment being entered by consent for the amount of one of the bonds, the defect is cured, and leaves the plea to be tested as to the matter of the defense, on the sufficiency of the facts stated in it.

2. After a plea is filed it is too late to object to it as being insufficient in law; the plaintiff should demur if he wishes to test its validity.

3. J. sued N. on a bond; N. pleaded specially that the bond sued on was given in 1866, in lieu of one given in 1863, which latter was executed in pursuance of a debt payable in so-called confederate currency, and the consideration of which was wholly and entirely such currency, and the bond was, therefore void; to which J. replied specially that the bond sued on was executed in consideration of the compromise of certain "disputes and difficulties" between them. To this replication the defendant demurred, and the demurrer was sustained, and judgment entered for N. HELD:

> That the plea and replication were both bad, and the demurrer to the replication should have been sustained, the plea held bad, and judgment entered for J.

James Jarrett, Jun., brought an action of debt in the circuit court of Monroe county, to July rules, 1867, against James M. Nickell. The declaration described two bonds, in two counts. The first count described a bond for 642 dollars, dated May 23d, 1866. It is unnecessary to mention the other one, as judgment was had on it by consent.

The defendant filed a special plea at the September term,

1867, alleging in substance that, on the 20th of October, 1863, the defendant became indebted to the plaintiff in so much of the currency or money of the late so-called confederate states, as purported to be of the value of and amount of 8,602 dollars, and to secure the same, executed his, defendant's, bond to the plaintiff for that sum; that afterwards, on the 23d of May, 1866, he executed to the plaintiff eight bonds in lieu of the bond above mentioned, of which the bond sued on was one, and for no other consideration; all of which bonds were executed for an illegal and treasonable consideration, and were, therefore, void. To this plea a general replication was filed by the plaintiff. At the November term following, the plaintiff obtained leave to withdraw his replication, and objected to the plea, which was overruled, and he filed a special replication averring that, at the time the bond sued on was executed, certain "disputes and difficulties" existed between the plaintiff and defendant, which were then and there settled, and that the bond was then and there executed in consideration of such compromise and settlement.

To this replication the defendant demurred, at the December term, 1868, and, on joinder in the demurrer, the court sustained it, and gave judgment for the defendant, after having given the plaintiff leave to withdraw his replication and to take issue on the defendant's plea, or to file another and proper replication. The plaintiff brought the case here on a writ of error and supersedeas.

Hon. N. Harrison, Judge of the circuit court of Monroe county, presided on the hearing of the case.

*Sperry* for the plaintiff in error.

The replication alleged that certain disputes and difficulties existed between the plaintiff and defendant, which disputes and difficulties were compromised and settled, and the bond of 642 dollars was given in consideration of such compromise and settlement; and the only question before the

court upon the replication was as to the sufficiency of a compromise and settlement of difficulties and disputes as a consideration for the bond. It was not alleged that the replication was otherwise defective, but that the original consideration was so vicious that a compromise of all disputes concerning it could not validate it. The demurrer admitted the truth of the replication that the compromise was the consideration of the bond, and the court was bound to presume that the compromise was fairly made, and was duly understood by the parties at the time, otherwise a special rejoinder would have been filed, alleging the fact of unfairness or misunderstanding in avoidance of the replication. Then what is the law? Where a compromise of a doubtful right is fairly made between the parties, the compromise is binding and cannot be affected by any subsequent investigation or result; and this is so whether it is a compromise of a doubtful question of fact or law. *Durham* vs. *Waddlington*, 2 Strobb, Eq., 258. So in the case of *Moore and McClung* vs. *Fitzwater*, 2 Rand., 442.

A compromise of doubtful and conflicting claims and the settlement of boundaries, is notably a good and sufficient consideration to uphold an agreement, but it is highly favored in law. *Zane* vs. *Zane*, 6 Munf., 406.

The court will not investigate the worth or amount of the different claims for the purpose of setting aside such compromise. *Mills* vs. *Lee*, 6 Monroe, 97; *Bennett* vs. *Paine*, 5 Watts, 259; *Cavode* vs. *McKeloy*, Addy, 56.

The defendant in an action of slander, in which the words laid in the declaration were not actionable, compromised with the plaintiff by agreeing to give him a certain sum of money. The court below held that there was not a sufficient consideration for the promise, but the supreme court reversed the judgment. *O'Keson* vs. *Barclay*, 2 Pennsyl. R., 531.

In Chitty on Contracts, it is laid down as law, that a consideration which has for its object the prevention of litigation and the settlement of disputes between the parties, is

sufficient to support a promise. Page 44, top side, 41–2, and see, also, note 1, same pages.

It has been decided that a compromise of certain suits and of forbearing to urge a prosecution for perjury against the grantor, will not be set aside in equity. (*Moore* vs. *Adams*, 8 Ham., 372.)

A compromise of disputed rights, both partners being ignorant of the true state of these rights, is valid, whether the ignorance be of matter of law or fact. *Trigg* vs. *Read*, 5 Humph., 529; *Anderson* vs. *Bacon*, 1 A. K. Marsh., 48; *Underwood* vs. *Buckman*, 4 Dana, 309; *Draper* vs. *Onsley*, 15 Miss. R., 559. This latter case is one in point.

In this case a motion was made to reject the plea, and it was overruled. The demurrer also goes back to the first error in pleading. If the plea was bad, the motion to reject ought to have been sustained and the demurrer to the replication overruled.

The plea was clearly bad for several reasons :

1st. It purported to make defence to the whole action, but was, in part, a defence to only the first count. The sum demanded in the declaration was 722 dollars and 13 cents, consisting of two bonds set out in two distinct counts, and, although the defendant craved oyer of both bonds, and alleged that the plaintiff ought not to have or maintain his action, yet he set up, in his plea, defence to one count only, and said nothing as to the other. *Hunt's Adm'r* vs. *Martin's Adm'r*, 8 Grattan, 578; 2 Tuck. Com., 256. These authorities, and many others show such a plea to be demurrable, and it would be no answer to say that judgment was afterwards permitted to go on the other count. This was after the plea was pleaded, and the demurrer would affect the replication, plea and declaration, without regard to any order the court had made, or might make.

2d. Because the plea did not set up a good defence to the first count. The plea admits that before the execution of the bond in question, to wit: on the 20th of October, 1863, he had executed his bond to the plaintiff for 8,602 dollars

in confederate states currency or money; and that after-
wards, to wit: on the 23d day of May, 1866, he executed
to the plaintiff eight bonds, the bond in suit being one, in
lieu and renewal of the bond of 8,602 dollars.   The aver-
ment is that he, the defendant, "became indebted to the
plaintiff in so much of the currency or money of the late
so-called confederate states as purported to be of the value
and amount of 8,602." Here is no averment of a corrupt
agreement, and there is no averment that the currency was
unlawful, except, in conclusion, by way of corollary from
the premises, it being no necessary part of the plea.   The
facts preceding do not show the consideration to be illegal
and treasonable.   What was the currency or money of the
confederate states?   Was it not gold or silver?   There is
no averment in the plea to the contrary, and our knowledge
of history cannot be invoked to aid us in supplying the de-
fects in the plea.   The plea should have set out to make it
good; if good, it could have been made that the confeder-
ate states government issued an illegal currency, known as
confederate states treasury notes; that the defendant be-
came indebted to the plaintiff, by a corrupt agreement, in the
sum of 8,602 dollars, in such illegal notes, for which he execu-
ted his bond, &c.   Our knowledge of history may, and often
does, supply evidence, but it never supplies defects in plead-
ings.   We must presume the currency or money of the
confederate states was legal currency, gold and silver, in
the absence of an averment to the contrary.   Such a defence
would not have been good to the original bond of 8,602 dol-
lars, much less to the bond in question.

3d. The plea is bad for another reason.   It shows by its
averments that after the war, after confederate notes were
notoriously worthless, if we are to rely on history, the par-
ties adjusted these matters, and new bonds were given for
the old; the new bonds were certainly not to be discharged
in anything but good money.   Here was clearly an ac-
counting together, and if there had been no writings before
or after, an action of assumpsit would have laid upon the

account stated, and the parties could not have gone behind the settlement without an averment of fraud or mistake, and the replication avers that these disputes and difficulties were compromised, and the demurrer admits the fact; yet the court sustained the plea and overruled the replication.

Were confederate treasury notes so vicious and worthless, as the court thought, as to be incapable of constituting a valid consideration of the compromise? The plaintiff had no agency in the issuing of them. They did not take their illegal character from him. He impressed upon them no vice. He only consented, in the strongest view of the case against him, to receive them of the defendant in payment of a debt, and we must presume that there was a consideration for the debt, and that when they were worth something, and because they were worth something. After these notes became worthless, the parties met and purged the contract of its legal vice, if it had any, and new bonds were given for the actual consideration, to be paid in legal currency.

Judge Chase did not think they were so vicious and worthless, for in the case of *Kipple* vs. *The Petersburg Railroad Company*, in the circuit court of Richmond, November, 1868, he said, speaking of confederate notes: "This currency may fairly be said to have been imposed upon the country by irresistible force. There was no other in which the current daily transactions of business could be carried on, and there could be no other while the rebel government kept control of the rebel states. The necessity for using this currency was almost the same as the necessity to live. No protest, no resistance, no rejection could avail anything. At the same time this currency, though it depreciated rapidly, had a sort of value. Its redemption, though improbable, was not impossible; and, until the downfall of the confederacy, it had a greater or less degree of purchasing power." And he accordingly held that the plaintiff should recover the value of the confederate notes in lawful money.

In another case at the same term, the case of *Botts, Byrne & Co.* vs. *Crenshaw*, he instructed the jury that if they were

satisfied that the defendant was liable to the plaintiffs, as their counsel, for money received during the war, and that he received it in confederate notes, they should ascertain the gold value of the notes at the time they were received, and make that the measure of their damages.

Judge Chase could not, therefore, have thought that confederate notes had such a contaminating influence upon a contract that neither the parties nor the court could purge it of its vice and make the original consideration of it the basis of a compromise.

In the case of *Berkshire* vs. *Evans et al.*, 4 Leigh, the court, a court of chancery, too, compelled Berkshire to account as cashier of an illegal banking company, though he relied, in his answer, upon the fact that the plaintiffs were stockbrokers of an illegal banking company.

There is another reason why this plea is bad. A court of law cannot go into the consideration of the bond, whatever might have been done if suit had been brought on the first bond. Such defence cannot be made to this, it being a general rule that a court of law cannot go into the consideration of a bond without an averment of fraud, mistake, &c., and that under the statute of 1831; and this is not a plea under that statute. It is not a plea averring damages and offering to set them off against the plaintiff's demand; but it is purely a plea at common law. A court of equity is the only forum for a relief in such cases. 2 Tuck. Com., 419; 6 Munf., 120.

*Snyder* and *Hereford* for the defendant in error. Mr. Snyder said :

In the brief argument of this cause, which we shall endeavor to present on behalf of the defendant in error, our first purpose will be, to show the insufficiencies of the technical objections urged by the counsel for the plaintiff in error, to the pleadings. That there are formal defects in the pleadings, we shall not attempt to deny, but, we think, we shall be able to show, to the satisfaction of the court,

that they are simply and only formal defects, such as do not affect the merits or substance of the matters involved in the action, and are cured by the proceedings as presented in the record.

The first objection urged in the plaintiff in error's petition is, that the plea, while it professes to answer the whole action, in fact, answers only one count; and that though the plaintiff took issue upon this plea by a general reply thereto, still it is contended that because the defendant demurred to the replication, after judgment had been entered by default upon that part of the plaintiff's demand, which had not been answered by the plea, that this "demurrer would affect the replication, plea, and declaration, without regard to any order the court had made or might make." It is conceded that, had the plaintiff demurred to this plea in the first instance, his demurrer would, perhaps, have been good, as it was in the case of *Hunt's Adm'r* vs. *Martin's Adm'r*, 8 Grat., 578, cited by the plaintiff in error. But in that case there was no pleading over as there was in this. It is, also, conceded as a general rule, that on demurrer, in any stage of the pleadings, the court will consider the whole record, and give judgment for the party who, on the whole, appears to be entitled to it; but this general rule applies to defects in matters of substance, and not in respect of mere matters of form, such as may be cured by subsequent proceedings. Steph. Pl., 145 to 150. *Goodburne* vs. *Bowman*, 9 Bing., 532, and 5 Rob. Pr., 156–7. If at the time of the demurrer to the replication or of the motion to reject the plea, the pleadings were in such a condition as to present the real matters in issue, so as to enable the court to pass upon the merits and very rights of the parties, then any defects in the antecedent pleadings must necessarily have been formal, because they could not relate to the merits or substance. Then, how is this case tried by this test? The action was on two bonds, upon one of which the plaintiff had already obtained judgment; by this he could surely not be prejudiced; and the right to recover on the other was

put directly in issue by the plea, so that the merits of the case were presented by the issue upon the only matter in dispute, that is the bond of 642 dollars, and judgment could be rendered thereon "according to law, and the very right of the cause." Stat. *jeofails*, Code Va., (Ed. 1860,) chapter 171, section 31, page 712, and Steph. Pl., 146. But this rule, if applicable at all, would apply, with equal force, to the declaration, which is, in form, defective for not alleging damages corresponding with the damages set out in the writ. Upon these grounds, which are amply sustained by the authorities above cited, we think the court was fully justified in overruling the plaintiff's motion to reject the plea, and in refusing to set aside the plea on the defendant's demurrer to the replication.

The second ground of error which we shall notice, is the last set out by the plaintiff in error in his petition : that the court erred in giving judgment for all the costs to the defendant, when it should have given him only such costs as accrued after the judgment for 80 dollars and 13 cents. We do not think this objection is sustained by the record. The order of the court is, simply, that the defendant recover his costs, &c. Now, his costs could only be for such costs as accrued in his defence after the rendition of the judgment for 80 dollars and 13 cents, in which costs had been given to the plaintiff. The language of the order is capable of this construction, and it is the only reasonable and consistent interpretation that can be given to it; for, otherwise, we would have to presume that the court had indulged in the vain attempt to annul the first judgment for costs, rendered at a former term, and which was, therefore, beyond its control. We think no such violence will be presumed.

But, even conceding that this was error, it was such as might have been corrected on a writ of error, *coram nobis.* Code of Virginia, section 5, chapter 181, page 743, and under section 6, of same chapter, this court will make the proper correction and affirm the judgment, notwithstanding.

The third ground of error, which we shall notice, relied

upon by the plaintiff in error is, that "as a general rule, a court of law cannot go into the consideration of a bond without an averment of fraud, mistake, &c., under the statute of 1831;" and that the plea not being under that statute, nor a plea averring damages and offering a set-off against the plaintiff's demand, but purely a plea at common law, could not have been, therefore, entertained, and should have been rejected.

A seal does not prevent a contract from being impeached in a court of law, for the illegality of the consideration. The distinction is between a bond given without consideration and a bond given upon an illegal consideration. A defendant, though he is not at liberty to show that a bond executed by him is without consideration, may, nevertheless, prove that the consideration upon which it was given is illegal, as being immoral or contrary to public policy. *Martin* vs. *Amos*, 13 Iredell, 201.

An action will not lie to enforce an illegal agreement, nor to enforce a bond or other instrument given in pursuance of the illegal agreement. It will not lie on a bond given by a man to a woman for the performance of an agreement "to live together" in a state of fornication. *Walker* vs. *Perkins*, W. Bl., 517; 3 Burr., 1568; or upon a bond given to secure the payment of money upon an agreement for future unlawful co-habitation. 3 El. and Black., 650; 77 Eng. C. L. R., 650; or to indemnify against a note that is void. *Collins* vs. *Blantern*, 2 Wils., 349; or upon any contract for a matter or thing that is prohibited by statute. *Bartlett* vs. *Viner*, Carth., 252. The authorities clearly show that a bond or covenant which springs from, and is the creature of an illegal agreement, cannot be enforced. *Fisher* vs. *Bridges*, 3 El. and Black., 118; 3 Id., 642; 76 Eng. C. L. R., 118; 77 Id., 642, 25 English Law and Equity, 207; *Paxton* vs. *Popham*, 9 East, 408.

A like doctrine is maintained in the United States. *Gray* vs. *Hook*, 4 Comstock, 457, and 459; *Armstrong* vs. *Toler*, 4 Wash. C. C. R., 299, and 11 Wheat., 268; *Wheeler* vs. *Rus-*

*sell*, 17 Mass., 281; *Mitchel.* vs. *Smith*, 1 Binn., 110, and *Neller* vs. *Clark*, 20 Wend., 24.

Generally speaking, no illegality being disclosed by the agreement, the court is unable to pronounce against it as illegal, until the illegality is pleaded and admitted or proven. *Jones* vs. *Waite*, 9 Clark and Fin., 109; *Wood* vs. *McCawn*, 6 Dana, 369.

Wilmot, C. J., in *Collins* vs. *Blantern*, 2 Wils., 348, said: "There was no difference between an act being void by statute or by the common law; that the statute law is the will of the legislature in writing; and that the common law is nothing but statutes worn out by time." * * * "The principle upon which courts of justice must go, is to enforce the performance of contracts not injurious to society; it would be absurd to say that a court of justice shall be bound to enforce contracts, injurious to, and against the public good. No man shall come into a court and say: 'Give me a sum of money which I desire to have contrary to law.'" The most of the cases above cited are collated in 2 Rob. Pr., (New Ed.,) page 32 and 33, and in 5 Id., 444. See, also, the remarks of Lord Mansfield, in *Pole* vs. *Herrobine*, 9 East., 416, note.

These authorities, we think, are a full and complete refutation of this objection made by the plaintiff in error.

The fourth alleged ground of error is, that the plea does not show, by sufficient averments, the illegal character of the consideration of the bond. And, in support of this objection, it is urged, that the "currency or money of the late so-called confederate states," might have been gold; that "our knowledge of history may, and often does, supply evidence, but it never supplies pleadings;" and, that under this plea, we must presume "the currency or money of the late so-called confederate states," therein referred to, was gold and silver. We submit, that it would be a very violent, not to say absurd, presumption for a court of any of the United States, much more a West Virginia court, to presume that, in October, 1863, the currency or money of the so-

called confederate states was gold and silver! On the contrary, does not this court judicially know, and does not every other court of this Union know, that at that time, the currency of the confederate states was the treasury notes issued by the government of the said confederate states, for the purpose of waging a war of rebellion against the United States? It is a notorious fact, known not only from public history, but from the law itself, through the public acts of congress, the proclamations of the executive, general orders of the war department, and other public records of the United States, that the currency of the so-called confederate states, in 1863, was an illegal and treasonable currency, the circulation of which was interdicted and prohibited by the government and laws of the United States. It being such illegal and interdicted currency, recognized as such by the public laws and general policy of the United States, the courts are bound to take judicial notice of its illegal character. 1 Ch. Pl., 214; Steph. Pl., 345 and 348; 1 Greenl. Ev., 6. There can be no proper distinction taken between the terms "the so-called confederate states currency," and the currency of the so-called confederate states. And we find in the case of *Brown* vs. *Wylie*, that Judge Brown, in speaking of this illegal currency, calls it "confederate money." 2 W. Va. Rep., 508. It is provided in the statute law of this State, that no fact need be alleged in the pleadings which it is unnecessary to prove on the trial, (1 Ch. Pl., 214; Code of Virginia, section 10, page 710,) and, therefore, it is unnecessary to plead anything which the court will, *ex officio*, take notice of in evidence. Steph. Pl., 345–8. The courts will take judicial notice not only of all public laws of the United States, proclamations of the President, &c., but of matters of public history affecting the whole people, &c. 1 Greenl. Ev., 8; 1 Stark. Ev., 211, and *Bank of Augusta* vs. *Earle*, 13 Pet., 519, 590. Then, we conclude, that it was unnecessary to aver the illegal character of the confederate currency.

But, suppose we are mistaken in claiming that the courts

will take judicial notice of the illegal character of confederate money, still the allegations of the plea, in this respect, are amply sufficient.  It avers that "on the 20th day of October, 1863, the defendant, becoming indebted to the plaintiff, in so much of the currency or money of the late so-called confederate states, as purported to be, &c., *   *   * and so the defendant says, that the consideration, both of the said bond of 8,602 dollars, and of the bond of 640 dollars, in the declaration mentioned, being an illegal and treasonable one, the supposed writing obligatory of 640 dollars, in the declaration mentioned, is void in law."

The plaintiff in error objects that there is no averment here, that the currency is unlawful, except by way of corollary from the premises.  A corollary is a truth consequent upon a preceding proposition.  If, then, the averment that the consideration of both the bonds of 8,602 dollars, and of 640 dollars are illegal and treasonable, be a truth consequent upon what is stated in the premises of the plea; that is, if it be a corollary, as stated by the plaintiff in error, it is immaterial whether it is conceded that this corollary is a necessary part of the plea or not.  Because, if it be a necessary and proper inference from the premises, it can be no more than a re-statement of what is contained in, and warranted by, the premises; but, if the premises do not justify this latter averment, or corollary, as it is called by the plaintiff in error, then it is not a corollary, but necessarily an independent allegation, and must be taken as a substantive and material part of the plea; so, in either view, the plea sufficiently avers the illegality of the consideration of the bonds. But it is entirely unnecessary to elaborate this branch of the argument, as no court can be justified in presuming that the currency referred to, was any other than the illegal and treasonable notes of the late so-called confederate states. Moreover, the plaintiff, by replying to the plea, confesses not only to the facts stated in it, but its conclusion.  And had the consideration of the bonds mentioned in the plea been gold and silver, or legal currency, would he not have

replied generally to it, instead of the replication he has filed.

Having brushed away the chaff and cob-webs, behind which the counsel for the plaintiff in error has so industriously and ingeniously entrenched his client, we come now to the more material matters involved in the issue of this case.

We find that the plaintiff in error has cited, in support of the validity of contracts based upon the consideration of confederate money, some newspaper reports of decisions made by Chase, C. J., in the United States circuit court, at Richmond, Va., which even were they authentically reported, could not be authority in this State. First, because those decisions, in all probability, were induced by the local laws of the State of Virginia, by which confederate contracts are legalized, while there is no such legalization in this State; and second, because the illegality of such contracts has been expressly decided and determined by this court. *Brown* vs. *Wylie,* 2 W. Va. Rep., 502; and *Weaden* vs. *Bright et al.,* (not yet reported.) We think, therefore, that the general policy and decisions of this State fully justify us in stating that a bond, the consideration of which is confederate money, will be held illegal and void by this court.

Taking the plea, then, to be true, does it not set up a good defence to the bond of 642 dollars, the only matter in controversy? It alleges, first, that, in 1863, the defendant executed to the plaintiff his bond to secure the payment of 8,602 dollars of the currency of the confederate states; and second, that, in 1866, he executed to the plaintiff eight bonds in lieu, and renewal, of the said bond of 8,602 dollars; that one of said eight bonds is the bond of 640 dollars in the declaration mentioned; and that the consideration of both the bonds of 8,602 dollars, and of 640 dollars is illegal, treasonable and void in law.

From what has preceded, we have shown that, by the laws of this State and the decisions of this court, a bond given to secure the payment of confederate money, is illegal

and void; the plea alleges that the bond of 8,602 dollars was executed to secure the payment of confederate money; it is, therefore, illegal and void.

The plea further alleges, that the bond of 640 dollars, is one of eight bonds given in lieu, and renewal, of the bond of 8,602 dollars, " and for no other consideration whatever." Then can a bond, the consideration of which is illegal, be purged of its illegality, and made a valid obligation by a subsequent renewal?

When a recovery cannot be enforced at law upon a contract, neither can it be enforced upon a bond or other instrument given for the performance of that contract.    *Cannan, &c.,* vs. *Bryce,* 3 Barn. and Ald., 5 Eng. C. L.; 2 Rob. Pr., (New Ed.,) 32–33; 5 Id., 450, 502 and 528, and *Bank of U. S.* vs. *Owens et al.,* 4 Pet., 527.

In a case before the supreme court of the United States, in 1865, wherein it was argued that, admitting certain banking transactions to be illegal, yet the settlement of the balance, and giving notes therefor, purged from the original taint, the new promise, as it was called, the court said: "The answer is, that the new promise is founded upon the illegal consideration, a debt or demand growing out of the illegal transactions; and is as infirm, in the eye of the law, as the implied promise that existed previous to the giving of the notes." *Brown* vs. *Talkington,* 3 Wallace, 381. This case meets the one at bar exactly, and no further citation of authorities is necessary to show the illegality of the bond of 640 dollars.    Then, we think, we have shown, conclusively, that the plea, in substance and in form, is a good answer to the action.

Our next inquiry will be, to ascertain what effect the plaintiff's replication has upon his right to recover?

It is a well established rule in pleading, and one which will not be controverted, "that every pleading is taken to confess such traversable matters, alleged on the other side, as it does not traverse."    Steph. Pl., 217; Bac. Abr. Pl., 322, 286, and *Hudson* vs. *Jones,* 1 Salk., 91.

The replication avers, that, at the time of the execution of the bond of 642 dollars, certain disputes and difficulties existed between him and the defendant, which were then and there compromised and settled, and that the said bond of 642 dollars was given in consideration of such compromise and settlement. Here is no allegation of what the certain disputes and difficulties were which were then and there compromised and settled; nor does it traverse, either directly or by implication, the allegations of the plea, that the bond of 8,602 dollars was executed to secure the payment of confederate money, and that the only consideration for the bond of 642 dollars, is, that it is one of eight bonds given in lieu, and renewal of the said bond of 8,602 dollars, and it contains no other consideration whatever. In order, then, to reconcile the averments of the plaintiff's replication with the matter which he confesses or fails to traverse in the plea, we are forced, irresistibly, to the conclusion that the certain disputes and difficulties, alleged to have been compromised and settled, related, exclusively, to the mode and manner of renewing the said bond of 8,602 dollars. No other consideration is alleged to have entered into the bond of 642 dollars, except that stated in the plea. The court will remark the cautious phraseology in the replication. It does not allege that matters of dispute, matters of controversy, suits, boundary lines or conflicting claims and demands existed, as would certainly have been the case had any such matters, or others of a legal nature existed; but it simply, and only alleges, that " certain disputes and difficulties" were compromised and settled. What is the value of a dispute or difficulty? How many would it take to make a valid consideration for a bond of 640 dollars, especially when they related, exclusively, to a bond given for the payment of 8,602 dollars in confederate money?

Having, then, shown that the bond of 8,602 dollars was illegal and void, that the bond of 642 dollars, given for a part of the consideration of the said bond of 8,602 dollars, is also illegal and void; then, the only question yet to be

disposed of is, whether or not "certain disputes and diffi-
culties," in relation to the illegal bond of 8,602 dollars, at
the time the said bond of 642 dollars was executed, would
purge it of its illegality or add anything to its validity? Or
whether such disputes and difficulties, which result, by
means of compromise and settlement, in the execution of
eight bonds in lieu and renewal of the said illegal bond of
8,602 dollars, will make those eight bonds, or any one of
them, legal obligations, such as this court will enforce? The
proposition is simply ridiculous.

No court of justice can, in its nature, be made the hand-
maid of iniquity. Courts are instituted to carry into effect
the laws of a country. How can they, then, become auxil-
iary to the consummation of violations of law by enforcing
the execution of a contract, such as the one at bar. We,
then, conclude that the replication sets up no legal answer
to the defense made in the plea, and, therefore, the court
did not err in sustaining the demurrer to it, and rendering
judgment for the defendant.

But, even supposing, for the argument, that the replica-
tion is good, and that the court erred in sustaining the de-
murrer to it, still this court must affirm the judgment of the
court below, or, at least, render judgment for the defendant
in error. For, by the common law, pleading must not be
double; and a "pleading will be double that contains several
answers, whatever be the class or quality of the answer,"
whether it be law or fact. This rule applies both to the
declaration and subsequent pleadings. Steph. Pl., 251, 258
and 273. Under our statute, however, this law is changed
so far, and no farther, as it it relates to the declaration; and
"the defendant, in any action, may plead as many several
matters, whether of law or fact, as he shall think necessary."
Code of Virginia, section 23, page 712. This statute is en-
tirely for the benefit of defendants, and does not alter the
common law rule as to pleadings subsequent to the decla-
ration. Therefore, when the court below overruled the
plaintiff's objection or demurrer to the plea, it was then

and there the duty of the court to give judgment for the defendant. Steph. Pl., 273; and it had no right to permit the plaintiff to file a replication to the plea, after the demurrer had been overruled. In *Lang* vs. *Lewis' Adm'r*, Brook, J., in delivering the opinion of the court, says: "The court is of opinion that the superior court erred in permitting the plaintiff to reply and demur to the same pleas." 1 Rand., 281. And in *Maggort* vs. *Hansbarger*, the court decided, that, unless the plaintiff move for leave to withdraw his demurrer and reply, the demurrer will be overruled, and final judgment entered for the defendant. 8 Leigh., 532. In the case at bar, the plaintiff not only did not move for leave to withdraw his demurrer, (or objection for insufficiency in law, which is the same,) and to reply, but, on the contrary, he permitted the demurrer to be overruled by the court, and then excepted to the ruling of the court. This was certainly an end to the case. The plaintiff, by allowing his demurrer to be overruled, precluded himself from replying, and, thereupon, the court should have, peremptorily, entered judgment for the defendant. Then, we conclude, that even should this court be of opinion that the replication is good, still it will regard all proceeding subsequent to the overruling of the motion to reject the plea as nullities, and render such judgment, at that stage of the proceedings, as the court below should have rendered.

Our argument is concluded, and we should add nothing more, did not courtesy require that some notice should be taken of the able and elaborate manner in which the counsel for the plaintiff in error has presented the law on the validity of compromises. While the numerous citations of authorities, which he has made, show a commendable industry on his part, they exhibit, we think, very doubtful discretion; they do not sustain his issue. The authorities cited by him, all go to prove, that, to make a contract, based upon a compromise, valid, there must be some actual or supposed consideration for it; but none of them sustain the

validity of a compromise, based upon an illegal considera-
tion, such as that presented by the plaintiff in error. The fa-
miliar maxim, "*ex turpi causa non oritur actio,*" is a complete
answer to the plaintiff in error's pretentions in this case.

We submit that in either view, the judgment of the court
below should be affirmed with costs.

BROWN, *President.*

This is an action of debt on two bonds; the declaration
contained two counts, the first on the larger bond, the sec-
ond on the smaller, to which there was a special plea in
bar.  The plea purported to make defence to the whole
action, but the matter of defence went only to the consider-
ation of the larger bond mentioned in the first count.  In
this the plea was clearly bad, but judgment was entered, by
consent of the parties, for the amount of the smaller bond,
on the second count.  The defect in the plea above men-
tioned, was cured by the judgment entered by consent, and
left the plea to be tested as to the matter of defence, on the
sufficiency of the facts stated in it.  There was a replication
to the plea, but subsequently withdrawn by leave of the
court, and thereupon the plaintiff objected to the plea as
not sufficient in law, but the objection was overruled, and
the plaintiff excepted; the objection was properly overruled,
because it was too late to object and the plaintiff should
have demurred to the plea, if he sought to test its validity,
after it had been filed.  The plaintiff then replied specially
to the plea, and thereby waived his objection to its suffi-
ciency, and the defendant demurred to the replication.  And
these pleadings raised the question as to the legality of the
bond dated May 23d, 1866, the consideration of which is as
follows:  On the 20th of October, 1863, the defendant, be-
ing indebted to the plaintiff, in so much of the currency or
money of the late so-called confederacy as purported to be
of the value, and to the amount of 8,602 dollars, to secure
the payment of which, he executed to the plaintiff his bond
of that date for that amount.  And on the 23d of May,

1866, he executed to the plaintiff eight bonds, of which the bond in the first count of the declaration was one, in lieu of the bond first mentioned in the compromise settlement of the difficulties and disputes between the plaintiff and defendant, in relation to the same. The whole transaction occurred in the county of Monroe, between parties resident there. The compromise under such circumstances was valid, and upon sufficient consideration, and is fully sustained by the authorities cited in the argument.

The replication, therefore, was a good answer to the plea, and the demurrer to the replication should have been overruled, and the judgment entered for the plaintiff upon the first count, also, of the declaration. I am of opinion, therefore, to reverse the judgment of the circuit court of Monroe, with costs to the plaintiff in error, and this court, proceeding to enter such judgment as the circuit court ought to have entered, should enter judgment for the plaintiff for the debt in the first count in the declaration mentioned, and for his costs in the court below.

Judges Maxwell and Berkshire concurred in reversing the judgment and entering judgment for the plaintiff in error. But they were of opinion that the plea and replication were each bad, and that the demurrer to the replication should have been sustained, the plea held bad, and a judgment entered on the declaration for the plaintiff.

JUDGMENT REVERSED.