# CHARLESTON.

CAMDEN v. McCOY *et al.*

Decided December 1, 1900.

48    377
49    358

48    377
63    458

1. SPECIFIC PERFORMANCE—*Contract.*
    In a suit to enforce the terms of a written agreement, if the intention of the parties is plainly expressed and the contract is free from ambiguity, the same will be enforced, without resorting to parol proof of the surrounding 'circumstances. (p. 380).

2. DECREE—*Dissatisfaction—Ambiguity.*
    Where a decree has been rendered in the circuit court for a certain sum, and the plaintiff, not satisfied therewith, obtains an appeal to this Court, where the decree is affirmed, and four parties interested therein employ an additional attorney to obtain a rehearing of said cause, and, in the event the same is reversed, and further prosecuted, agree to pay him one thousand dollars certain, and a contingent fee of five per cent. on the

net recovery in excess of the decree rendered in the circuit court, said fees to be paid *pro rata* by said four parties, said contract is unambiguous, needs no construction, and is enforceable against each of said four parties. (p. 381).

Appeal from Circuit Court, Wood County.

Action by H. P. Camden against John H. McCoy and others. Judgment for plaintiff. Defendant John H. McCoy appeals.

*Affirmed.*

VAN WINKLE & AMBLER, J. W. VANDERVORT, and JOHN F. HUTCHINSON, for appellant.

SMITH D. TURNER, for appellee.

ENGLISH, JUDGE:

This case involves the proper construction of an agreement entered into between W. H. Gillespie, J. H. McCoy, J. Friend Hutchinson as executor of J. A. Hutchinson deceased, and Thos. J. Stealey of the first part, and H. P. Camden of the second part as to the amount of fees he was to receive for his services as attorney in the case of *Williamson* v. *Jones* then pending in this Court on December 10, 1896.

The agreement reads as follows: "The said parties of the first part agree to pay to H. P. Camden for his services as an attorney in the case of *Williamson* v. *Jones* now pending in the Court of Appeals of West Virginia, and for his services should the case be reversed and further prosecuted in the circuit court of Tyler County, West Virginia, one thousand dollars, each party hereto agreeing only to pay two hundred and fifty dollars out of the recovery in said case by the decree of the circuit court of Tyler County appealed from, if the same should be confirmed by the Court of Appeals; and if the plaintiffs recover anything over and above the amount and interest decreed by the circuit court of Tyler County, West Virginia, in said cause, it is further agreed by each party hereto to pay said H. P. Camden five per cent of the net recovery over and above that already decreed to the plaintiffs, payable out of the recovery set apart to each party in *pro rata* proportion—that is to say, five per cent. on the excess to J. A. Hutchinson and J. Friend Hutchinson, to be deducted by W. H. Gillespie out of said recovery, five per cent. of

the excess to each of the other parties hereto, J. H. McCoy, W. H. Gillespie and Thos. J. Stealey,—that is to say this means each of the four parties herein mentioned agree to pay their one-fourth separately of the excess recovered of the five per cent. on the excess mentioned above."

Now, what is a fair and reasonable construction of this contract, and what was H. P. Camden to have as compensation for his services as an attorney in the case? If it was reversed by this Court, to be further prosecuted in the Tyler circuit court he was to be paid one thousand dollars, which sum was to be paid in equal proportions by Gillespie, McCoy, Hutchinson and Stealey out of the recovery in said suit by the decree of the circuit court which had been appealed from.

On the other hand, if the plaintiffs should recover anything over and above the amount and interest decreed by the circuit court in said cause, it was further agreed by each party thereto to pay said Camden five per cent. of the net recovery, over and above that already decreed to the plaintiffs, payable out of the recovery set apart to each party in *pro rata* proportion; that is, each of the four parties was to pay one-fourth of the five per cent. on said excess so recovered. What is meant by the net recovery in the connection in which it is used? Surely the net recovery was intended to mean the excess over and above that already decreed in the circuit court, less the amount to which Nancy Engle would be entitled, which is shown to have been ten thousand dollars. Now that Camden made no contract to limit his fees in the case by a percentage upon the fees to be received by Hutchinson, Stealey or McCoy, is shown by the testimony which discloses the fact that Camden knew nothing of their contract for fees in the case; and further, by the plain terms of the contract which was made without any reference to the fees others were to receive.

It appears from the testimony of Judge Stealey that both Camden and W. P. Hubbard were employed as counsel after the case had been brought to this Court, and the decree of the circuit court affirmed and in March or April, 1894, Camden was sent to Charleston to ask for a re-hearing and re-argument of the case, which mission was successful. This testimony is material to show the condition of affairs at the time Camden became counsel, and the circumstances surrounding the parties to the contract when it was entered into.

Judge Stealey also testifies that he drew the contract, in accordance with his understanding of the agreement; that at first he was opposed to paying Camden five per cent. on the recovery over and above the amount then decreed in the circuit court, but that McCoy and Gillespie both stated to him (though not in Mr. Hutchinson's presence) that Hubbard was to be paid five per cent. of the recovery on said excess, if any there should be, and that was used as an inducement by them to get him to agree to the proposition, which he finally did. This testimony shows the intention of three of the parties to the agreement.

It further appears that Hubbard received seven thousand five hundred dollars as his fee in the case, that is, five per cent. on one hundred and fifty thousand dollars. Thus it would seem that the parties to this agreement in settling with Mr. Hubbard estimated the net recovery at one hundred and fifty thousand dollars. Stealey and Gillespie, in settling with Camden, paid him their portion of his fee at the rate of five per cent. on the same amount, and McCoy, after some little contention did the same; but J. F. Hutchinson, executor, who received twenty-one thousand eight hundred and fifty-three dollars and thirty-three cents as his portion of said recovery, is alone contending with the plaintiff as to the amount he is entitled to receive. The testimony shows that Camden had no conference with him before the agreement was signed because of some differences arising in the settlement of the partnership affairs of Hutchinson & Camden; but that Gillespie, McCoy and Stealey, after their interview with Camden at the Blennerhasset Hotel went to Hutchinson's office and talked with him, Judge Stealey preparing the contract, which was shown to Camden when he came in, and after he looked it over and pronounced it correct, it was signed by all of the parties; and four out of the five of them agree as to the amount Camden is entitled to under said contract.

In *Crislip, Guardian* v. *Cain,* 19 W. Va. 483, GREEN, JUDGE, speaking for the Court stated the law correctly as follows.: "Where an agreement in writing is expressed precisely as the parties intended that it should be expressed, it cannot be varied or altered by the court on parol proof that the parties were laboring under a mistake as to the legal consequences of such an agreement. But where the agreement as reduced to writing does not express the real contract of the parties because of want of skill in the draughtsman or any other reason, it may be reformed

by a court of equity." Citing *Lockings* v. *Riddle,* 21 Ala. 252; *Huss* v. *Morris,* 13 Pa. 367.

The defendant, however, contends that the contract is ambiguous, which we cannot concede; and even if it were so, it has been held that the courts will look at the surrounding circumstances existing when the contract was made, at the situation of the parties and the subject matter of the contract, and will sometimes even call in aid the acts done by the parties under it as affording a clue to the intention of the parties. *Crislip, Guardian* v. *Cain,* 19 W. Va. 483, *supra; Hurst* v. *Hurst,* 7 W. Va. 299; *French* v. *Cahart,* 1 Comstock (N. Y.) 109; *Merriam* v. *U. S.,* 107 U. S. 437; *Nash* v. *Towne,* 5 Wall. 689.

Parsons on Contracts, 8 Ed. vol. 2, 495, under the head of "Construction and Interpretation of Contracts" says: "The first point is to ascertain what the parties themselves meant and understand. But however important this inquiry may be, it is often insufficient to decide the whole question. * * * * Courts cannot adopt a construction of any legal instrument which shall do violence to the rules of language or the rules of law."

Beach on the Modern Law of Contracts, vol. 1, s. 721, speaking of construction by the parties, says: "If the words or terms of a contract are equivocal, resort may be had to the circumstances under which the contract was executed and to the contemporaneous construction given to the contract by the parties. * * * * The subsequent acts are admitted to show how the parties understood their contract, and are a practical construction of it. * * * * It is a familiar doctrine that when the terms of an agreement are in any respect doubtful or uncertain and the parties to it have by their own conduct placed a construction upon it which is reasonable such construction will be adopted by the court, because it is the duty of the court to give effect to the intention of the parties where it is not wholly at variance with the correct legal interpretation of the terms of the contract."

I do not, however, regard it as necessary in this case to resort to any refined rules of construction in order to arrive at the true meaning of the parties to this contract. If there could be any ambiguity about it, the intention of the parties is made clear by the last clause of the contract, which plainly means that each party is to pay one-fourth of the five per cent. on the

net excess recovered over and above the decree of the circuit court as it then stood. Therefore I am of opinion that there is no error in the decree complained of, and it is affirmed.

*Affirmed.*