# CHARLESTON.

### GEORGE M. BOARDMAN *v.* O. T. FRICK.

Submitted December 12, 1923.  Decided December 18, 1923.

1.  BILLS AND NOTES—*Renewal Note Payable in Dividends on Stock
    Must be Supported by Consideration.*

    Where a promissory note is payable in dividends to be de-
    clared by a corporation on its stock, and a renewal note is
    executed which changes the original so as to make the per-
    sonal credit of the maker the essential and primary basis, and
    providing that dividends on the stock are to be used for pay-
    ment as received; some valid consideration must pass in order
    to sustain the change in the original contract.  A valid con-
    sideration is necessary to support the change, such as a for-
    bearance to sue, extension of time, or adjustment of some con-
    troversy.  (p. 265).

2.  SAME—*Renewal Note to Ascertain Proper Credits Made by a
    Payment of Dividends Held Without Consideration.*

    Where such renewal is requested by the maker for no other
    purpose than to ascertain the proper credits which should be
    made by reason of payment of dividends about which there is
    no controversy, and the renewal is for that purpose only, no
    consideration has passed supporting such radical change from
    the terms of the original contract as set out in the first point.
    (p. 268).

3.   EVIDENCE—*Intent of Note As to Fund Primarily Liable for Payment Ascertained from. Circumstances.*

A promissory note which on its face is ambiguous as to whether the payee shall look to a particular fund for payment, or whether the personal credit of the maker is primarily liable for payment, may be interpreted and its true intent and purpose ascertained by resort to the circumstances surrounding the parties, their situation and relation, and the practical construction given by them both simultaneously and subsequently.   (p. 271).

4.   SAME—*Maker May Show Conditions the Violation of Which Will Defeat Enforcement.*

Where litigation is between the original parties to a promissory note, or those standing in no better situation than the original parties and charged with knowledge of the purpose of the note and for what reason and under what conditions given, the maker may show a contemporaneous parol agreement between himself and the beneficiary of the note, which induced him to sign it, and the violation of which by the payee will defeat its enforcement.   (p. 272).

Error to Circuit Court, Cabell County.

Suit by George M. Boardman against O. T. Frick. Judgment for plaintiff, and defendant brings error.

*Reversed, and judgment entered.*

Paul W. Scott, for plaintiff in error.

Fitzpatrick, Brown & Davis, and Robert E. McCabe, for defendant in error.

LIVELY, JUDGE:

The judgment complained of by this writ of error was rendered October 14, 1922, by the court, a jury having been waived, and is in favor of George M. Boardman, plaintiff below, against O. T. Frick, defendant below (plaintiff in error) for $5,978.87, the basis of which is a note dated March 1, 1913, for $3,790.15, payable one day after date, in favor of Boardman, and made by Frick.

The suit is by notice of motion for judgment, to which defendant appeared and pled the general issue and filed a special plea alleging in substance that the note sued on was a renewal note and was executed without consideration so far

as it attempted to change the legal effect of the obligation contained in the original note, that this change in the obligation was void and its execution obtained by fraud, false representation and circumvention. The evidence was taken by depositions and submitted to the court in lieu of a jury, with the result above indicated. The note sued on is as follows:

"New York, March 1, 1913.

"One day after date, I promise to pay to the order of George M. Boardman, at his office, Number 10 Bridge Street, New York City,

Thirty-seven hundred ninety and 15-100 Dollars,

With interest from date at six per cent per annum. Value received.

This note is secured by 75 shares, capital stock of American Naval Stores Company, Certificates Number 121 and Number 315, and dividends on said stock are to be used for payment of this note as received $3790.15.

(Signed)    O. T. FRICK."

This note is a renewal of a somewhat similar note below set out. It is designated in the record as a "renewal" and as a "new note." It is reasonably clear that it was intended as a renewal of the old obligation. Both parties treated it as such. The original note is as follows:

"6216.50          Savannah, Georgia, April 1, 1907.

One day after date I promise to pay to the order of George M. Boardman,

Sixty-two Hundred Sixteen and 50-100......Dollars. With interest from date at six per cent per annum. Payable in dividends to be declared by American Naval Stores Company of West Virginia, secured by fifty shares of stock in American Naval Stores Company of West Virginia, certificate Number 121. Value received.

(Signed)    O. T. FRICK.".

This original note came into existence in this way: Prior to its execution two competitive corporations were in existence, one known as the S. P. Shotter Company and the other as the Patterson-Downing Company. The stock of the two companies was placed under control of a third corporation known as the Atlantic Investment Company. Each corpora-

tion continued under its separate existence until the merger was attacked under the Sherman Anti-Trust Law. Then it appears that these two corporations went out of existence and the American Naval Stores Company, another corporation, took over the assets and business of the two companies. Boardman was president, director and treasurer of the Patterson-Downing Company and one of its several stockholders; he was a large stockholder in the Atlantic Investment Company, and when the American Naval Stores Company was formed he became treasurer of that corporation, a large stockholder therein, and a member of its board of directors. Defendant Frick was an employee, first of the S. P. Shotter Company and afterwards of the Atlantic Investment Company and of the American Naval Stores Company. The S. P. Shotter Company went out of existence in 1906, and when the American Company was formed about that time he entered its service and continued until some time in the year 1910. Frick was not an officer of any of these companies. It appears that when the Atlantic Investment Company was formed Frick was given 50 shares of the stock of that company, for which he gave a note, which provided that it was to be paid out of dividends of the company. The policy was to encourage desirable employees to become interested in the corporation, and do more energetic work for that reason. This stock was paid by the dividends. S. P. Shotter, of the S. P. Shotter Company, was an officer of the Atlantic Investment Company and of the American Company, and when the latter was formed the company followed the policy of the Shotter company and the Atlantic company in encouraging its desirable employees to take stock so that they would become interested in the employing company, allowing them to pay for the stock out of dividends accruing. The original note above set out came into existence in that way, and was for 50 shares, which the note says on its face was put up as collateral security; the note being payable in dividends to be declared by the American Naval Stores Company of West Virginia. It will be noted that this obligation is made payable to Boardman, the plaintiff. The explanation of why this was done is not very clear. Boardman says he purchased the obligation

from Shotter and paid cash therefor. He had no negotiations whatever with Frick, the maker of the note. Just how this was an obligation which Shotter could sell is not clear. It is not assigned by Shotter. His name does not appear in connection with it. Shotter says he had no such transaction with Boardman, and neither did the Shotter company. The Shotter company could not have done so, because it was not in existence, having been dissolved in 1906. The note was given for the stock, and naturally would have been made to the American company. Presumably, the money which Boardman says he paid for the obligation went into the treasury of the American company. Frick says he was directed by the Savannah office, from which he received the note for signature, to make the obligation in that way. There is no denial that Boardman paid the money which he said he did as an investment. He stands in no better position than the American company. He does not look to Shotter as an endorser. On its face the note is payable to Boardman, and in the manner therein stated. He has no standing as an *innocent purchaser* for value. Evidently he did not pay it to Shotter who did not own it, and who says he had no transaction of that character with Boardman. Dividends were regularly declared on the stock each January up to and including the year 1913, and were credited on the original note as paid, discharging that much of the note together with accrued interest. At the date of the new note these payments had reduced the amount to the exact sum for which the renewal note was given, $3,-790.15. Some time prior to January 9, 1913, a stock dividend had been declared by the American company of 50 per cent, and 25 additional shares of this stock dividend had been issued to Frick. On that date, January 9, 1913, Boardman requested Frick by letter to send him the 25 shares stock dividend to hold as collateral. He offered to pay Frick $2,500 for the 25 shares, and apply the same on the note, which was declined by Frick. Boardman never claimed this stock dividend to apply on the note, but requested that it be sent to him to hold as collateral, and offered to buy it as above set out. About this time Frick requested that the note be renewed in order to show the amount remaining unpaid thereon, which

by exact calculation amounted to the sum stated in the renewal note. There had been a dividend of $6.00 on each share, which had not been credited, which afterwards came in and was credited on the old note, and the renewal note was not sent until after that sum had been credited as of March 8, 1913. It will be observed that the renewal note was dated March 1st. On March 13th the American company failed, and no further dividends were paid, and it seems that the stock is practically worthless. Five years later, this action was begun. Boardman says he was waiting to see if anything would be paid on the stock which he held as collateral before suing. He admits that in 1913, after the failure, he had information that Frick claimed he was not to pay the obligation except out of dividends declared on the stock. It will be observed that the renewal note is quite different in terms from the original note. By its terms it is a direct promise to pay to Boardman the amount therein stated, and instead of being payable out of dividends as stated in the original note, the stock is put up as collateral security with the dividends therefrom to be used in payment. Boardman says he had a purpose in changing the terms of the new note. He says, however, that there was no consideration for the change as made. The contention of Frick is that he signed the renewal note, not having the original before him, and under the supposition that it was the same as the original and that no intimation of the change was given him by Boardman; and on this is based the claim set out in his plea that the terms of the renewal note were obtained by fraud, false representation and circumvention. He resists the payment on the ground that there was no consideration for the change in the terms of the renewal note and that there was no meeting of the minds of the parties in making this change, and that it was done by circumvention on the part of Boardman and signed inadvertently by defendant. Boardman contends that there was sufficient consideration for the change, in the fact that it was a renewal of the note for an antecedent debt, which, of itself, constitutes a consideration for the renewal and all of the provisions therein even though they may differ from the original note. The further contention of counsel

for Boardman is that the consideration for the new note was in the waiver of Boardman to require the stock dividends to be applied in reduction of the note instead of holding it as collateral. However, Boardman in his evidence does not claim this as a consideration. He never made any demand that the dividend stock should be so applied, and accepted it as collateral. He did not claim it in that way, but offered to purchase it, acknowledging Frick's right thereto. He states also that there was no consideration for the change made in the renewal note. Both parties, at the time the renewal was given, considered the stock valuable, and Boardman accepted without question the stock dividend as additional security, and before the renewal was requested. But it is contended that the antecedent note is the consideration for the renewal in its changed form. There can be no question that the existence of the old obligation was consideration to support a renewal of the same obligation. An antecedent debt constitutes consideration for a renewal. But the distinction here is that the renewal makes, or attempts to make, a new contract radically different from the old one. If the renewal was made for the purpose of preventing a suit on the old, the same having become due, then there would be a consideration for a new and changed obligation. *Williamson* v. *Cline,* 40 W. Va. 194. An extension in time of payment, forebearance to sue, or any like benefit to the maker, however small, would support the additional terms of the new promise and afford a consideration for the renewal note in all its terms. *Sheffield* v. *Harvesting Machine Co.,* 59 S. E. 1113. We have nothing of that kind here. The renewal was for no other purpose than ascertainment by the parties of the amount remaining unpaid on the old obligation. The case of *Renick* v. *Correll,* 4. W. Va. 627, and cases of like nature following it, are cited by counsel for Boardman to sustain the proposition that although the original note was payable out of dividends, the fact that such original note was given would be sufficient to support the renewal note in its changed form. *Renick* v. *Correll* was a suit on a bond for $4,000 given to the administrator of William Renick, against R. W. and B. F. Renick, and the money so borrowed was intended to be used and

was used to pay a confederate debt owing by the makers of the note to Ludington in a land transaction, plaintiff's intestate knowing that the money was to be so used. R. W. Renick had purchased land from Ludington for $20,000 confederate money, on which land Wm. Renick, plaintiff's intestate, had a lien, for which Ludington had given his note to Wm. Renick. Afterwards R. W. Renick and Ludington rescinded their trade, except that the $20,000 in confederate money was not refunded, and the bond sued on was for the purpose of refunding that confederate money and for no other purpose, and it was claimed that there was no consideration for the bond for that reason. The money borrowed was ''good and lawful'' money, and the court held that even though plaintiff's intestate knew it was to be used to pay an illegal debt, yet the consideration was good. The court said that although defendants might have been indebted to plaintiff's intestate in any sum to be paid in confederate money, and settled or compromised the claim by giving bond for a less sum, it constituted consideration, under *Jarrett* v. *Nickell,* 4 W. Va. 276, where it was held that confederate treasury notes were not so vicious and worthless as to be incapable of constituting a valid consideration of a compromise. If the antecedent debt is a mere moral, and not a legal, obligation, its existence will not be sufficient consideration to support a written promise to pay it. *Gooch* v. *Gooch,* 70 W. Va. 38; *Cox* v. *Davis,* 85 W. Va. 604. The law raises no promise to pay in such cases. Was there a moral or legal obligation on Frick to pay the note, if it was not paid out of the dividends?

Frick was not benefited in any way by the change in the terms of the old note. Both were one day notes, and we can see no consideration for the change in the terms of the obligation or what consideration passed from either party for this change in the original contract. We think the change in the renewal note being without consideration can not avail the plaintiff. It must be considered as if the note had been renewed in the terms of the original note. Whether there was fraud, circumvention or trickery in procuring it, is immaterial. Frick signed the renewal with his eyes open. No false representations were made. While he asked to renew

the note, it was his duty to know what he was signing. The
question then arises whether, under the terms of the original
note, this balance could be recovered from Frick. It will be
observed that the original note contains a direct promise to
pay a certain amount of money one day after date with in-
terest, value received. It is payable out of the dividends on
the stock. But is that the exclusive method of paying this
note? It does not say that if the note is not paid by dividends
it shall become void. Frick says such was the understanding
he had with the company when he gave the original obliga-
tion, and that it was an inducement for him to work without
increased salary. It was giving him a chance to participate
in the earnings of the company in lieu of increased salary.
Shotter, who was the chairman of the board of directors of
the American company at the time the stock was issued and
note given, also says this was the understanding. But can
we vary the terms of this contract by the understanding of
the parties at the time, if the writing itself is not ambiguous?
We do not think it is clear from an inspection of the note that
it was intended that payment should be made exclusively
from the dividends declared; nor is it clear that dividends
on the 50 shares which secured the note alone should be ap-
plied to its discharge. Frick may have had other stock from
which dividends would be applied on the note. As determin-
ing the negotiability of the note (if it was otherwise negoti-
able) the true test is, does the note carry the general personal
credit of Frick, or only the credit of a particular fund, the
dividends of the American Naval Stores Company? This
question must be determined by the circumstances and situa-
tion of the parties, unless the note itself puts the meaning
beyond question. *Bank* v. *Lightner*, 8 L. R. A. (N. S.) 231;
*Heflin Gold Mining Co.* v. *Hilton*, 124 Ala. 365; *Bank* v.
*Sullivan*, Anno. Cas. 1913C, 930, and note on p. 932. ''In
all cases in which a particular fund, to accrue *in futuro*, is
designated in the draft, and the language is ambiguous, the
turning point is whether it was the intention of the parties
that the payment should be made only out of the designated
fund, when or as it should accrue, or whether the direction
to the drawee to pay was intended to be absolute, and the

fund was mentioned only as a source of reimbursement, or an instruction as to book keeping." *Brill* v. *Tuttle,* 81 N. Y. 454; 37 Am. R. 515. If the language be ambiguous it is elementary that the situation of the parties and surrounding circumstances may be shown and considered. "The circumstances under which a writing was made may be always shown. The question the court is seeking to answer is the meaning of the writing at the time and place it was made, and all the surrounding circumstances at the time necessarily throw light upon the meaning of the contract." Williston on Contracts, sec. 618. We think the evidence which detailed the circumstances leading up to the acquisition of the stock by Frick, the policy of the American company in retaining its desirable and capable employees without raise in salary, the connection of plaintiff as an officer and director with the companies, and his interest therein, and the terms and understanding on which the stock was sold and purchased was admissible to throw light on the crucial question, namely, whether the dividends to be declared were the sole source of payment of the note, or whether it was intended that Frick was to pay for the stock if dividends failed. Boardman stands in no better position than the American company which issued the stock as an inducement to hold its capable employees. He took the note and the stock as collateral knowing the conditions stated on the face of the note, and was charged with constructive notice of the policy of his company in which he was a large stockholder, a director and an officer. Another rule of construction is that the acts of the parties at the time and subsequent to the transaction are a cogent index of the intention and meaning of the contract. The practical construction which the parties place upon a contract is entitled to great consideration where there is any doubt as to its meaning. *Bank* v. *McVeigh,* 32 Grat. 531; *Gibney* v. *Fitzsimmons,* 45 W. Va. 334; *Camden* v. *McCoy,* 48 W. Va. 377. The note was at one day, and no question was raised as to its payment after the due date, no demand made on the maker, until five years after dividends had ceased and it was ascertained that the stock was worthless. Boardman knew in 1913, after the company failed, that Frick would resist payment. Plaintiff

was looking to the dividends for reimbursement. He knew nothing of the financial responsibility of Frick when he took the note, in fact had no knowledge of him, and evidently was not considering him as a source of payment. His attempt to change the obligation and make a new contract by which defendant would be bound personally beyond question evidenced his interpretation of liability under the old note. Moreover, Shotter and Frick both say the dividends were the only source of payment, and that it was the understanding when the stock was issued. Frick was dealing with the company and made the note payable to Boardman at its instructions. Boardman's transaction was with the company and not with Frick. There is much authority to the effect that where the controversy is between the original parties to a promissory note a parol contemporaneous agreement between the parties may be shown which induced the making of the note and which agreement has been violated after the note is given. *Faux* v. *Titler*, 223 Pa. 568; 72 Atl. 891, and cases there cited.

We hold that the evidence and circumstances impel the conclusion that the original note was to be paid only in dividends from the stock, the agreed source of payment; that the change in the original note by the renewal note making a new and different contract was without consideration to support it; and therefore judgment of *nil capiat* should have been rendered.

The judgment will be reversed, and judgment of *nil capiat* entered here.

*Reversed; judgment entered here.*